## BECKY L. K. KALAMAKEE BY HER GUARDIAN, J. W. KEIKI, *v.* HENRY WHARTON AND THE WAI- ALUA AGRICULTURAL COMPANY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED OCTOBER 11, 1904.    DECIDED NOVEMBER 7, 1904.

HARTWELL, J., AND CIRCUIT JUDGES DE BOLT AND GEAR IN PLACE OF FREAR, C.J., AND HATCH, J.

STATUTE OF LIMITATIONS—*acts of ownership under deed from a co-tenant purporting to convey the entirety—presumption of hostile nature of such acts when unexplained.*

Acts of ownership, such as fencing the land, cultivating a small part of it and using the rest for pasturage, when done by a person having a conveyance of the entirety from a co-tenant are presumed in the absence of other explanation to have been done in accordance with the estate purporting to have been conveyed to him, and to be hostile to the rights of the other co-tenant.

INFANT CO-TENANT—*requirement of statute of limitations.*

The statute applies alike to infants as to persons not under disability in requiring reasonable attention to the condition of their property, following *Thurston v. Bishop,* 7 Haw. 421.

ID.—*fiduciary relation.*

A grantee of the entirety from a co-tenant is not regarded as holding a fiduciary relation to the other co-tenant, a child of about four years of age at the date of the conveyance, merely because the child was brought up in the family of the grantee's mother who had married the child's grandfather, and was treated by the family as a kind of daughter, ("me ke ano kaikamahine").

ID.—*failure of co-tenant to inquire concerning authority of the grantee for making use of the land amounts to a waiver of demand and refusal to be let into possession.*

Acts of ownership done by one having color of title and presumably based thereon ought to be noticed by the other co-tenant and to have caused inquiry concerning the new-comer's source of authority. Failure to make such inquiry amounts to a waiver of demand and refusal on the part of the co-tenant to let her into possession.

ID.—*directed verdict.*

Uninterrupted and unopposed possession for over ten years under color of title, the possession being shown by fencing, cultivating and depasturing the land, with no evidence other than a grant of the entirety of the land from a co-tenant to explain the acts of possession entitled the defendants to a directed verdict in their favor, the plaintiff's action not having been brought within five years after the end of the ten years' possession.

PRACTICE—*judgment non obstante—title of verdict.*

No motion having been made before the trial judge for judgment *non obstante,* no question of law on the propriety of such judgment is presented by the bill of exceptions.

The court having upon the suggestion of the death of the guardian *ad litem,* by whom the infant's motion was brought, allowed the substitution of the name of a guardian, the verdict was properly entitled accordingly.

### OPINION OF THE COURT BY HARTWELL, J.

This was an action to quiet title, the plaintiff claiming an undivided half of certain land situated at Waialua, in the Island of Oahu, containing about fifty acres, as heir of her father, who held under a conveyance of October 21, 1899, from Kamila, granddaughter of the patentee. The land described in the patent descended from the patentee to his son

and daughter as tenants in common. The son conveyed his undivided half of this land to Wharton, one of the defendants, by deed of December 3, recorded December 10, 1878, which purported to convey all of the land, and not merely the grantor's share.

The plaintiff is entitled to the undivided half of the land claimed by her, and the verdict in her favor must stand if there was no reversible error in the instructions given to the jury, or in the refusal to give instructions asked by the defendants, unless the grantor Kamila was disseized of the land by the course relating to it which was pursued by the defendant Wharton after he obtained his deed of December 10, 1878, and the disseizin continued long enough to bar action by Kamila or her grantee to recover possession of the land according to her estate therein as tenant in common. Kamila was born about the month of August of 1874, her mother dying shortly after, so that she was nearly four and a half years old at the time of her uncle's deed to Wharton, and became twenty years of age in about August of 1894. If she had then been disseized for a period of ten years, the statute which required an action to be brought by her to recover possession of the land within five years after she became twenty years of age would bar this action, which was brought January 11, 1900. The defendant Wharton, November 8, 1897, leased the land to the Halsteads for a term of twenty-five years, which lease they assigned to the other defendant, the Waialua Agricultural Company.

The defense is that on the facts shown by the undisputed evidence this action was barred by the statute, and also that the instructions that the court gave were not appropriate to the evidence, while those which were asked by the defendants and refused by the court were appropriate, and ought to have been given.

The land was granted by patent dated May 30, 1850, for the consideration of $12.50, and is described in the patent as "kula," which is land having no water rights. Barenaba, a witness for the defendants, testified upon cross-examination that Kaahanui

and Kamaka, who were the patentee's son and daughter, occu-
pied this land after Kanoena's death, the latter being the pat-
entee of the land; and that he never knew of any interruption in
that joint possession of Kaahanui and Kamaka. (Transcript,
p. 52.) It is difficult to say from the testimony whether the
witness, by the words "occupied" or "possession," did or did not
mean residence. The patentee Kanoena married for his second
wife the mother of the defendant Wharton, whose house was
"less than ten chains" from his own. There he appears to have
gone to live after his second marriage, and there his grand-
daughter Kamila was brought up. Wharton himself did not,
however, live in the same house, but at a distance, as he says,
of the judiciary building from the executive building. (*Ib.*,
p. 73.) The land was uncultivated and unfenced, animals
roaming about the country at large, grazing upon it, and noth-
ing whatsoever conclusively appears to have been done upon the
land by anyone until the year 1885, when the defendant Whar-
ton ran a fence around three sides of it so as to include the
adjoining lot known as the Kuemanu land; the Halstead fence,
made in 1882 or 1883, having extended along the other side of
both lots. Wharton then plowed and planted in melons, corn
and pumpkins what one witness says was a "small strip," or
about "one acre of the land," and which he himself says was
"some acres." It is not clear from the evidence whether only
one crop was planted, namely, the crop planted in 1891 or 1892,
(transcript, p. 73,) or whether this strip of land was planted
every year. He dug a well and made a windmill, either upon
this land or upon the adjoining Kuemanu land, apparently
upon the latter, his own testimony not referring to the well, and
one of his witnesses, on cross-examination, places it upon the
adjoining land. (Transcript, p. 33.) After he had fenced the
land he took in animals of Chinese for pasturage at $5.00 a
head. At some time not clearly defined, some of the defend-
ants' witnesses testify that Wharton had men at work on the
land clearing it of lantana and bushes. In his own testimony
he does not refer to this. For instance, the witness Puaiole

says that Wharton in 1881 was cutting down the lantana and also hiring men to dig a well. (*Ib.,* p. 24.) Wharton himself testifies that it was in 1885 that he got the use of the Kuemanu land, (*Ib.,* p. 68,) and that it was then that he planted the crop referred to and used the rest of the land for pasturage. (*Ib.,* p. 68.)

The jury undoubtedly would have been justified upon all the evidence in finding that it was not until the year 1885 that the defendant Wharton began to do anything with this land, other than that his animals, in common with those of other people in that vicinity, ran upon the land. March 8, 1895, a strip of this land was taken for a government road, and Wharton gave a deed of conveyance of it to the Minister of the Interior for the consideration of $100. Nothing else appears to have been done with the land by Wharton than above mentioned until his lease to the Halsteads of November 8, 1897. Kamila never made any use of it.

As between the co-tenants under the common title of descent from the patentee, none of the acts if done by one of them which were done by Wharton would have justified the other in thinking that there was a claim of exclusive ownership. As between such co-tenants when "the co-tenancy is known or recognized, more significant acts or conduct would generally be required, for the co-tenant in possession would in such case naturally be supposed to be acting merely in the exercise of his own rights and not in denial of his co-tenant's rights. There may be other relationships of a more fiduciary nature, the recognition of which would require acts of a yet more significant character to bring home to the real owner notice of a hostile claim." *Smith v. Hamakua Mill Co.,* 13 Haw. 721.

But the case of a grantee coming into the land under a deed from one of such co-tenants purporting to convey the entirety is different. It can not be said *prima facie* that such grantee regards himself as a co-tenant. It must be remembered that Kamila's infancy does not affect the rule of law requiring reasonable attention to her property and rights. The working of

the statute of limitations upon the rights of infants is often a hardship, but it is clear that if it were not for the five years allowed by statute they would be barred like any other person not under disability. *Thurston v. Bishop,* 7 Haw. 421.

A reasonable attention on the part of the co-tenant to the condition of the premises would have shown her that the land had been fenced and part of it had been planted by some one else than herself or her uncle, the former co-tenant, and that the person doing this was Henry Wharton, living near by; and further, upon inquiry of him, it is to be inferred that she would then and there have learned that he claimed under his deed to be the sole owner, and that she would not be allowed by him to exercise any rights of ownership. In other words, that which was done upon the land was enough to put her upon inquiry, and to bring the case within the rule that "the circumstances must be such as to bring home to the ousted owner the adverse character of the possession, or be such as would bring it home to him if he paid the proper attention to his rights." *Smith v. Hamakua Mill Co.,* 13 Haw. 721.

In this way of looking at the matter Wharton's use of the land dating from 1885, when he fenced it, must be regarded as hostile to Kamila's rights, being explained in no other way than by his deed of conveyance of the land.

Probably he knew that the niece Kamila inherited her mother's share in the land and was a co-tenant with her uncle. He says in his testimony that he "thought he was buying the share of the little girl." (Transcript, p. 74.) He knew the source of his grantor's title and that Kamila was granddaughter of his grantee's father. Nevertheless he took the deed of the whole estate from the part owner, and therefore it can not be inferred that, if asked to do so, he would have admitted that he claimed only the right of a co-tenant. On the contrary, the inference is that he would have claimed all that the deed purported to convey to him. We think on the whole that in the absence of any showing to the contrary, Wharton must be regarded as having exercised the rights of a sole owner from 1885; and that

notwithstanding his relationship with the child Kamila, he is entitled to the presumption of law that the action that he was taking was that which his deed in fact, although not in law, authorized, and hence that it was hostile.

Acts of ownership by one admitting his co-tenancy and within the rights of a co-tenant would require no attention, although if done by one having color of title as sole owner they ought to be noticed by the other co-tenant because they would presumably be based upon the colorable title to the whole estate. Wharton was a new comer, and his use of the land was such as ought to have caused Kamila to ask by what authority he was there. This would have shown her that he was claiming and acting adversely to her right. Her failure to make the inquiry amounts to a waiver of demand and refusal to let her into possession. The case therefore presented all the requirements of adverse possession continued for ten years.

The result of the foregoing conclusions which we have reached is that the defendants' motion at the close of the case for a directed verdict in their favor ought to have been granted, and that the exception to the denial of the motion is sustained.

Referring to the defendants' claim to be entitled to judgment *non obstante,* no motion was made before the trial judge for the entry of such judgment, therefore no question of law upon the propriety of the judgment of the circuit court is before us on these exceptions. The facts are not sufficiently free from controversy to require this court to order such judgment.

The defendants' claim that the verdict is improperly entitled can not be sustained, the court having upon the suggestion of the death of the guardian *ad. litem* allowed the name of the guardian J. W. Keiki to be substituted.

Examination of the instructions as given will show that they require considerable modification to conform to the view which we have taken of this case. Wharton's conveyance from Kaahanui gave him color of title, and the court in its first instruction of its own motion correctly instructed the jury, that "where a person enters onto land under a claim of title thereto by a

recorded deed, his entry and possession are referred to such title, and that he is deemed to have seizin of the land co-extensive with the boundaries stated in his deed, where there is no open adverse possession of the land so described in any other person." The court also at the defendants' request correctly charged that "if real estate is held in common, and one tenant assumes to convey the entire land by metes and bounds, his deed will furnish color of title."

Defendants' instruction nine was properly refused, since it was not true that the taking of the deed from Kaahanui conclusively established the fact that Wharton did not go into possession as a tenant in common, and that he was to be regarded as a stranger claiming title to the whole land under color of title. The proper modification of this instruction would be that in the absence of evidence to the contrary the facts mentioned might be regarded as shown.

But it is unnecessary to consider in detail the exceptions concerning the instructions. The exception to the refusal of the motion to direct a verdict is sustained and the case is remanded to the first circuit court for a new trial.

*J. A. Magoon, J. Lightfoot* for plaintiffs.

*Castle & Withington* for defendants; *C. W. Ashford* for defendant Wharton.