A. M. GRIFFITH *et al. v.* NASHVILLE, C. & ST. L. RY.

(*Nashville.* December Term, 1922.)

1. **TRUSTS.** Deed from trustee for incompetent not invalid because signed as guardian.

A deed by a trustee for an incompetent *held* not invalid because signed by him as guardian, he having power to sell the land in the capacity in which he held it, and his duties under the deed of trust not being inconsistent with those usually performed by a guardian. (*Post, pp.* 231, 232.)

2. **TRUSTS.** Trustee for incompetent held not authorized to convey right of way to railroad company.

Under a deed of land in trust for an incompetent with power to convey to him only when restored to mental soundness, the trustee had no power to convey a right of way to a railroad company, though he was the holder of the legal title, and the railroad had the power to take the property by condemnation proceedings. (*Post, pp.* 232-234.)

3. **TRUSTS.** No title acquired by trustee's deed subsequent to absolute conveyance by owner to cestui que trust.

Where, prior to the execution of a deed by a trustee for an incompetent, the owner of the land made an absolute conveyance to the *cestui,* thereby revoking the trust, grantee under the trustee's deed acquired no title. (*Post, p.* 234.)

4. **LIMITATION OF ACTIONS.** Railroad sued for value of land conveyed to it by incompetent's trustee held entitled to rely on statute relating to taking of private property for public improvements, where suit treated as one for damages.

In a suit by an incompetent's heirs for the value of property "unlawfully taken" by a railroad company, to which it was conveyed without authority by deceased's trustee, where the chancellor's

Griffith v. Nashville, C. & St. L. Ry.

decree, from which no appeal was taken by complainants, proceeded on the theory that the cause of action was that described by Shannon's Ann. Code, section 1866, authorizing the owner of private property taken for public improvements to sue for damages in the ordinary way, *held*, that section 1867, the statute of limitation relating to the taking of private property for public improvements, was applicable, and not the statutes of limitations applicable to real actions.   (*Post, pp.* 234-236.)

Code cited and construed: Sec. 1866 (S.).

5. **DESCENT AND DISTRIBUTION.** Heirs of incompetent have no right of action for damages accruing to him by taking of railroad right of way.

Heirs of an incompetent have no right of action for damages accruing to him by the taking of land by a railroad for a right of way; such action being in his administrator.  (*Post, pp.* 236-240.)

6. **LIMITATION OF ACTIONS.** Action by incompetent's heirs for damages for appropriation of land by railroad must be brought within year after his death.

Under Shannon's Ann. Code, section 4448, providing that one of unsound mind when a cause of action accrues, his representatives or privies, may commence the action after removal of such disability within the time of limitation for the particular cause of action, an action by heirs of an incompetent to recover damages, as authorized by section 1866, for appropriation of the latter's land by a railroad company, must be commenced within a year after his death, in view of section 1867.   (*Post, pp.* 236-240.)

Case cited and approved: Southern Railway v. Jennings, 130 Tenn., 450.

Code cited and construed:  Sec. 4448 (S.).

---

### FROM MARION.

---

147 Tenn.—15

Appeal from the Chancery Court of Marion County.—
HON. T. L. STEWART, Chancellor.

SIZER, CHAMBLISS & CHAMBLISS, for appellants.

FITZGERALD HALL and J. T. RAULSTON, for appellee.

MR. L. .D. SMITH, Special Justice, delivered the opinion
of the Court.

The complainants in this case are the heirs at law of
Amos Griffith and also of Joel Griffith, deceased. The bill
avers that Joel Griffith was the son of Amos Griffith, and
that Amos Griffith, who died prior to the death of Joel,
executed a deed of trust to W. S. Griffith (who was a son
of Amos and brother of Joel) conveying to him certain
lands in Marion county in trust for the benefit of Joel,
who was then, and ever since remained, *non compos mentis.*
The bill then alleges that after this conveyance by Amos
Griffith to W. S. Griffith the latter executed a conveyance
to the Nashville, Chattanooga & St. Louis Railway Com-
pany for a right of way through this land, and that soon
after the railway company entered and took possession
and built its tracks thereon and remained in the use and
possession thereof from that time on to the filing of the
bill. It is alleged that this conveyance to the railway
company was void because the said W. S. Griffith, trustee,
had no title to convey and no authority to make any con-
veyance under the trust · deed, and that the pos-
session of the railway company was not good as against
Joel Griffith or against the complainants. Upon these
averments the complainants say in their bill that they
are advised:

"That they are entitled to recover against said railway company to the extent of their undivided interest, which interest will be made to appear at the hearing, and which is in excess of five-sevenths of the entire title, and that the measure of their recovery is the reasonable value of said property unlawfully taken by said railway company at the time it was taken, together with interest since said time, which complainants are advised and charge are approximately $2,500."

They say they are further advised that they had no right of action in the premises until the death of Joel Griffith, and that the said Joel died intestate and without issue and without having been restored to his right mind on the 14th day of November, 1913.

The bill was filed on November 11, 1916, the prayer being in the following words:

"Let a decree be rendered in favor of the complainants to the extent of their undivided interest of the lands of the said railroad company for the value of said lands at the time they were taken with interest thereon."

All of the defenses were, while embraced in a demurrer, finally relied upon in an answer. This answer admitted that Amos Griffith, in July, 1863, conveyed to W. S. Griffith certain lands to be held by him in trust for the benefit of Joel Griffith, his son, who was of unsound mind. It admits that the said W. S. Griffith, on June 10, 1887, conveyed by a deed approximately four and seven-tenths acres of his land for a good and valid consideration. which was the fair and reasonable value of the land, paid to the said trustee.

The defendant admitted that soon after the execution of this deed it entered upon and took possession of the land, built its railroad thereon, and has continued to enjoy the use of the same down to the present time. The defendant also pleaded to the bill the statute of limitations of three years, six years, ten years, and twenty years, and also of seven years.

The defendant, by an amended plea, relied upon the statute of limitations of one year.

The bill was amended so as to allege and aver:

"That the defendant's possession of said right of way was not a condemnatory taking by virtue of the law of eminent domain, but was taken and held as a claimant of the land under the deed from W. S. Griffith executed on June 10, 1887; that the statute of limitations did not run in favor of the defendant and against Joel Griffith by virtue of possession under said deed, because the said W. S. Griffith had estopped himself from bringing suit against said defendant by the execution of said deed, and the said Joel Griffith was of unsound mind at the time said deed was executed and possession was taken thereunder, and continuously thereafter up to the date of his death, and this suit was brought within three years after his death; and that furthermore, the said W. S. Griffith, as trustee, having the right to manage and control said land during the lifetime and disability of Joel Griffith, the possession of the defendant under the deed of said W. S. Griffith was not adverse or hostile to the said Joel Griffith or his heirs until the termination of the trust by the death of Joel Griffith."

The chancellor treated the case as being one to recover damages under the provisions of the Code relating to the

taking of private property for internal improvements and referred the case to the master to ascertain damages upon the basis of section 1866, Shannon's Code. This section of the Code authorizes the owner of land which has been actually taken in possession for the purposes of internal improvement to petition for a jury of inquest, or to sue for damages in the ordinary way, in which case the damages to be assessed as upon the trial of an appeal from the return of a jury of inquest; that is to say, the chancellor was of the opinion and decreed that the complainants, as heirs at law of Joel Griffith, were entitled to recover the amount of damages incident to the taking and use by the railway company of the strip of land described, consisting of: First, the value of the strip so taken and used; and, second, the incidental damages to the remainder of the tract out of which said strip was conveyed caused by the taking and the use of said strip. He fixed the date of the death of Joel Griffith, November 15, 1913, as the date upon which the value and damages were to be determined. The chancellor, however, found and decreed that the railway company had paid to W. S. Griffith, trustee, the sum of $120, which the railway company would be entitled to a credit for, in the event it could show that it was spent in the support and maintenance of Joel Griffith. An appeal was prayed for by each side and denied until the coming in of the report on the reference. On the final decree the chancellor allowed $141 for the value of the land, and $125 as incidental damages. He disallowed the consideration paid by the railway company to W. S. Griffith, trustee, and rendered judgment for the sum of $383.04, which included interest from November 15, 1913, the date of the death of Joel Griffith.

From this decree the defendant railway company appealed to the court of civil appeals. In the court of civil appeals the complainant assigned errors, averring that the transcript had been filed in that court for a writ of error, which were treated as having been properly filed and overruled. The defendant railway company assigned errors raising the questions now relied upon by the railway company in support of the decree of the court of civil appeals, that court having reversed the action of the chancellor, basing their action upon the reasons as stated in the opinion:

"In dealing with and disposing of this case, we do not deem it necessary to rest our decision upon the statute of limitations, nor upon the proposition that the trustee, having the legal title, had the right to convey the right of way. We think it more equitable and a safer basis to rest the decision on to say that the defendant paid the trustee for said right of way what under a condemnation proceeding it would have had to pay, and that it took the place of a proceeding to acquire the right of way by a condemnation proceeding. If correct in this view, it settles the controversy. We are of opinion that, nothing else appearing to the contrary, the law will presume that the sum paid for the right of way was used or inured to the benefit of the ward, Joel Griffith, or his estate. Complainants have assigned error before this court, although, so far as we have discovered, they did not appeal complaining that the court did not allow incidental damages amounting to $750, the sum reported by the master."

The complainants have assigned three errors here, to-wit: (1) To the action of the court of civil appeals in holding that the purchase by the railway company of the right of

way took the place or had the legal effect of a proceeding to acquire such right of way by condemnation proceedings; (2) that the law presumes that the consideration paid by the railway company for the right of way to the trustee inured to the benefit of Joel Griffith, the owner of the land; (3) that the court of appeals should have modified the chancellor's decree with respect to the amount of incidental damages.

It is conceded that Amos Griffith was the owner of the land on the 9th of July, 1863, when he executed the trust deed to William S. Griffith, from whom the defendant railway company acquired its right of way by deed in June, 1887. One of the matters presented is whether or not this deed had the effect to vest title in the railway company to this right of way. The deed to the railway company carries the recitation upon its face:

"Know all men by these presents, that Joel Griffith, by his guardian, W. S. Griffith, of Marion county, Tenn., for and in consideration of the sum of $120 to me in hand paid, receipt of which is hereby acknowledged, and for the further consideration of the benefits to accrue to me on account of the construction of the Nashville, Chattanooga & St. Louis Railway of a branch of its line through my lands hereinafter described, do for myself my heirs, representatives and assigns, bargain, sell, and convey to the Nashville, Chattanooga & St. Louis Railway," etc., describing the right of way.

The deed is signed "W. S. Griffith, Guardian," and in the acknowledgment he is referred to as the guardian for Joel Griffith, the bargainor.

Some question is made upon the fact that in this deed W. S. Griffith represented himself as guardian, and not as

trustee, and that therefore the deed conveyed no title. We do not think there is any merit in this contention, since W. S. Griffith had power to sell the land in the capacity in which he held it. It is immaterial whether he styled himself as guardian or trustee. Certain it is that the duties which he had to perform under the deed of trust were not inconsistent with those usually performed by a guardian.

It is necessary to notice the deed under which W. S. Griffith held the land in order to determine whether or not he had the power to make the conveyance in question. The material provisions of this deed are as follows: It begins with this recitation:

"Whereas, I, Amos Griffith, am desirous to make pro-vision for my son Joel Griffith, whose physical and mental capabilities are deficient, so as to secure to him a comfortable maintenance and support against future contingencies, and being desirous that my said son to secure the ends aforesaid should enjoy the proceeds, rents and profits of the real estate hereinafter described during the time of his natural life: Now therefore, in consideration of the premises and the sum of $1.00 to me in hand paid I have this day bargained and sold and do hereby transfer and convey to William S. Griffith, his successors and assigns, the following tracts of land."

Then follows a description of the land, and concluding, the deed recites:

"To have and to hold the above-described lands and premises with their appurtenances unto the said William S. Griffith his successors and assigns, in trust for the uses, interests and purposes hereinafter mentioned, namely: First, to lease said lands and out of the rents and profits thereof keep said premises in good order and repair and

pay all taxes and charges lawfully imposed thereon. Secondly, to apply of the residue in the maintenance and support of the said Joel Griffith such sums of money and such times as a due regard to his necessities and comfort may require, accounting for the surplus if any, leaving it discretionary, however, with said William S. Griffith to permit the said Joel Griffith to control the leasing and income arising therefrom if competent to do so. Thirdly, to convey said lands to the said Joel Griffith in fee simple when permanently restored to health and mental soundness, but not otherwise, and the said Amos Griffith hereby declares that upon the decease of his said son Joel Griffith the aforesaid trust shall cease and determine and the land and premises above described shall belong in fee simple absolute to the issue of the said Joel Griffith lawfully begotten, and if the said Joel Griffith shall die leaving no lawful issue the said lands shall revert to me and my heirs forever."

Under this deed the legal title to said land was held for specific purposes; the trustee had no other right than such as are given in the deed; he was not given the right to sell the land, except to Joel Griffith, and to him only in case of his becoming of sound mind. The contention of the railway company that the power of sale is to be implied from the circumstances under which this deed was executed is not sound. While he was the holder of the legal title, that legal title was to be held and used for limited and restricted purposes. There existed no emergency or unexpected condition that would vest in the trustee the power of disposing of the property. The mere fact that a situation arose where a public corporation had the power to take part of the property did not vest authority in the trustee to sell it. It might have been quite sufficient for

the railroad company to have proceeded against the trustee as the holder of the legal title without making the beneficiary a party to the suit, but the trustee had no discretionary power at all with respect to the sale of the land that was to be held in trust for the protection of the trustee's ward, and it was a violation of the terms of his trust to undertake to sell it and fix a price therefor. We hold, therefore, that the railroad company did not acquire title to the right of way by the deed aforesaid.

There is still another reason why the railroad company did not acquire the title by this deed. Prior to the execution of the deed to the railroad company, and on the 16th of July, 1868, the owner of the land, Amos Griffith, made an absolute conveyance of the land to his son Joel Griffith, thereby revoking the trust reposed in his son W. S. Griffith. This latter deed was executed in consideration of love and affection "and for the better maintenance and support of the said Joel and his heirs." It is an absolute conveyance of the land, containing covenants that the land is unincumbered and of general warranty.

A great deal is said in the briefs about the statutes of limitation applicable to real actions, as if this were a case to recover the land itself, or the value thereof as for conversion. The case cannot be treated as a real action. The contention of the petitioner is that, the railroad company having gone into possession of this land under a deed which purported to convey the title, it cannot rely upon the statutes relating to the taking of private property for public improvements, and that, inasmuch as this suit was brought by the heirs of the owner within three years after his death, the possession of the property by the railroad company will not protect it under the stat-

utes of limitations, since during the entire period from the time it took possession until the death, on November 15, 1913, of Joel Griffith, the said Joel Griffith was of unsound mind. This contention would be sound if the complainants were suing for the land itself, but they are not doing that; they are proceeding against the railroad company upon the theory that after the death of Joel Griffith the railroad company was holding the land by virtue of the power of eminent domain. It is true that in the original bill the amount of damages which they sued for is the value of the land taken, and nothing was said about the incidental damages and incidental benefits. But the decree of the chancellor, from which no appeal was taken by the complainants, proceeds upon the basis that the cause of action is that prescribed by Code, section 1866 (Shannon's Annotated Code), authorizing the owner to sue for damages in the ordinary way, requiring the damages to be assessed as upon the trial of an appeal from the return of a jury of inquest. The decree of the chancellor gave the complainants the right to recover—"the amount of the damages incident to the taking and use by the defendant of a strip of land described in the bill, which damages the court adjudges will consist of: First, the value of the strip so taken and used by the defendant; and, second, the incidental damages to the remainder of the tract of land as of the date of the death of Joel Griffith, November 15, 1913."

There was no application for a jury of inquest, nor did the chancellor undertake to proceed in accordance with the provisions relating to steps to be taken where the petition is filed by a person or corporation authorized to construct railroads or other work of internal improve-

ments. The only right of action which the complainant had was either under this statute or to recover the land itself. The reasoning of complainants' counsel is the same as if this were an action of ejectment to recover the land. Since it is not that kind of an action, it must necessarily be the right of action which the facts of his bill authorizes, which was adopted by the chancellor, to which the complainants made no exception, and from which they took no appeal.

We must therefore consider the case in that light. In the first place, assuming that the damages sued for accrued to Joel Griffith, the complainants, as his heirs, would have no right of action at all under the averments of the bill. Under the averments of the bill such action would be in the administrator. Even if the complainants could succeed to the rights of Joel Griffith to recover the damages for the appropriation of this land by the railroad company, such an action would have to be brought within twelve months after the death of Joel Griffith. By section 4448, Shannon's Code, it is provided that, if the person entitled to commence an action is at the time the cause of action accrued of unsound mind, such person or his representatives or privies, as the case may be, may commence the action after the removal of such disability within the time of limitation for the particular cause of action. So that any right acquired by these complainants in the cause of action in favor of Joel Griffith was barred after the expiration of the period of time prescribed by the statute for the particular cause of action. The cause of action provided for in section 1866, which these complainants pursue to recover damages in the ordinary way for the land appropriated by public improvement corporation, is lim-

ited by section 1867 to the period of twelve months.  It provides, after giving the owner twelve months after actual possession has been taken and the work of proposed internal improvements begun within which to sue, "saving to persons under the disabilities of infancy, coverture, and unsoundness of mind, twelve months after such disability is removed, but not exceeding ten years." The right of action accruing in favor of Joel Griffith accrued in 1887. Being of unsound mind, the right of action, in whosoever's favor it existed, expired twelve months after his death, which was November 15, 1913, and this suit was not brought until November, 1916, nearly three years after the disability of Joel Griffith was removed by death, whereas the statute allowed only one year.  Of course, if these heirs were suing in ejectment to recover the land itself, they would have three years within which to bring it.

If we assume that the cause of action accrued to the complainants themselves after the death of Joel Griffith by virtue of having inherited the property and being the owner thereof, they would be barred after twelve months from the time they inherited the property, which was of course on the death of Joel Griffith.

The amended bill of the complainants alleges that possession of the railroad company under the deed was not adverse to the said Joel Griffith or his heirs until the termination of the trust by the death of Joel Griffith, by reason of the fact that said W. S. Griffith, as trustee, had the right to control the land during the lifetime and disability of Joel Griffith.  It might be inferred from this averment of the bill that the complainants were seeking damages by virtue of the possession continued after the death of Joel Griffith hostile to the complainants after

the death of Joel Griffith. Whether the case be treated as one in which the complainants are seeking to enforce a cause of action which their ancestor had, or one which began with their ownership, the result is the same. The suit would have to be begun within a period of twelve months, which is not the case here.

The railroad company cannot rely upon adverse possession as against Joel Griffith upon the theory that the legal title was vested in W. S. Griffith, and that the right of action was in him, for the reason that it had taken possession of the land under W. S. Griffith, and it would be estopped to say that it was holding and claiming adversely and hostile to the holder of the legal title. The most that could be said in favor of that position is that, the deed being void and of no effect whatever, they would be treated as having taken it under its power of eminent domain. But this cannot avail the complainants, even if the doctrine of the case of *Southern Railway* v. *Jennings,* 130 Tenn., 450, 171 S. W., 82, is applicable in a case of this kind. The complainants would have to sue within twelve months after his death, proceeding as they have, to recover damages in the ordinary way. The Jennings case is urged by the complainants as authority for their contention. In the Jennings case the railroad company acquired its title to a right of way by a deed from a life tenant, and it was held that, having taken possession and held the right of way under the deed, although it purported to convey title in fee, they could not rely upon possession during that period of time to defeat the rights of the remaindermen, which accrued at the date of the death of the life tenant. It was said that the company—"cannot invoke the protection of a statute which limits the time within which the

owner may sue for compensation for a taking by a con-
demnor, or have imposed upon the owner the burden of a
statute of limitation incorporated in and as a part of the
eminent domain law, no reciprocal burden of which is
to fall on the company, such as the enforced recognition
of the title as not being its own, and of readiness to com-
pensate the owner as involuntary vendor."

The reasoning just quoted was applicable to the case
then before the court. It may well be doubted whether
that reasoning would apply at all in a case of this kind,
where the company relied upon a void deed. However that
may be, the complainants are here seeking to recover of
the railroad company damages upon the theory that the
railroad company has taken the property under its power
of eminent domain, and since it is not suing for the prop-
erty, but for the damages allowable under the eminent do-
main statute. In the Jennings case the remaindermen
brought their suit within twelve months of the death of
the life tenant. Because they had no right of action at all
prior to the death of the life tenant, it was necessary for
them, in order to recover damages for the taking of their
property, to bring their suit within a period of twelve
months. Complainants will not be permitted to have the
benefit of a cause of action given to the owners of the land
by statute for property taken for public improvements,
and at the same time get the benefit of exceptions to the
statute of limitations existing in other causes of action,
such as ejectment. If they sue to recover damages under
the eminent domain statute, they must abide by the limi-
tations prescribed by the statutes applicable to that kind of
an action. The logic of the complainants' contention
would be to abolish the limitations as to time of bringing
a suit of this character. They rely upon the principle of

the Jennings case that, by having gone into possession of the land under a deed, the railroad company cannot thereafter claim to be holding it under power of eminent domain. Of course, the railroad company could not rely upon adverse possession of seven years to defeat an action like this, that statute not being available to it, and, not being in the attitude of a condemnor, no statute whatever would apply. Without questioning the soundness of that logic, it is obliged to fall down because, even though the railroad company is not a condemnor in the technical sense, they are sued by the complainant as if they were, and complainants have obtained a decree of the chancellor to that effect, and from which they did not appeal. They cannot be heard now to insist upon rules of law applicable to a different cause of action from the one which they brought and have prosecuted to this court.

It results, therefore, that there was no error in the decree of the court of civil appeals dismissing the complainants' suit, and that decree will be affirmed, but upon the grounds stated in this opinion rather than those stated in the opinion of the court of civil appeals.

It is unnecessary to discuss the assignments of error as to the amount of the damages allowed by the chancellor, or the reasoning of the court of civil appeals with respect to the rule of law that, in the absence of showing to the contrary, the presumption is that the funds received by the trustee for his ward were properly applied by him for his ward's use and benefit, although we concur with the chancellor in his views with respect to the amount of damages, and with the court of civil appeals in its conclusion just stated.

All costs of the cause will be taxed against the complainants.