## VICTORIA WARD, LIMITED, *v.* ZION SECURITIES CORPORATION AND KAHUKU PLANTATION COMPANY.

### No. 2523.

ARGUED JANUARY 19, 1944.   DECIDED FEBRUARY 10, 1944.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY KEMP, C. J.

This is an action at law to quiet title to an undivided 466/2880ths interest in and to Royal Patent Grant Number 3025 to W. Lane, known and hereinafter referred to as the land of Waiono.

The parties, both plaintiff and defendants, claim title through James Robinson, who died testate in 1876 seized of the said land, and by his will duly admitted to probate, after certain specific bequests, devised the rest and residue of his estate (which admittedly included the land of Waiono) as follows:

"Seventh. One Eighth of the rest and residue of my property both real and personal I give devise and bequeath to my Executors hereinafter named in trust—the income from the same to be paid in Quarterly payments to my daughter Mary Foster for the term of her natural life, and after her death I give devise and bequeath the said one Eighth to her heirs—One Eighth to my Executors hereinafter named in trust—the income from the same to be paid in Quarterly payments to my daughter Victoria Ward for the term of her natural life, and after her death I give devise and bequeath the said one eighth to her heirs: One Eight to my Executors hereinafter named in trust—the income from the same to be paid in Quarterly payments to my daughter Bathsheba Allen for the term of her natural life, and after her death I give devise and bequeath the said One Eighth to her heirs: One Eighth to my Executors hereinafter named in trust—the income from the same

to be paid in Quarterly payments to my daughter Matilda Robinson for the term of her natural life, and after her death I give, devise and bequeath the said One Eighth to her heirs: One Eighth to my Executors hereinafter named in trust, the income from the same to be paid in Quarterly payments to my Son Mark Robinson for the term of his natural life, and after his death I give devise and bequeath the said One Eighth to his heirs—One Eighth to my Executors hereinafter named in trust, the income from the same to be paid in Quarterly payments to my daughter Waty Robinson for the term of her natural life. and after her death I give devise and bequeath the said One Eighth to her heirs—One Eighth to my Executors hereinafter named in trust, the income from the same to be paid in Quarterly payments to my daughter Lucy Robinson for the term of her natural life. and after her death I give, devise and bequeath the said One Eighth to her heirs—One Eighth to my Executors hereinafter named in trust, the income from the same to be paid in Quarterly payments to my son John N. Robinson for the term of his natural life, and after his death. I give, devise and bequeath the said One Eighth to his heirs."

By his will the testator further provided: *"Eighth.* I authorise and direct my Executors hereinafter named to sell and convey any of the property hereinbefore described that I have devised in trust, except my homestead premises in Nuuanu Valley, whenever they shall deem it best and expedient for the interest of my Estate, and to invest the proceeds thereof for the uses and purposes of the trusts hereinbefore declared.

*"Ninth.* I ordain and appoint my Sons - in - law Curtis P. Ward and Samuel C. Allen and my Son Mark Robinson, as Executors of this my last Will and Testament, and Guardians of my Children who may be minors at the time of my decease, and Trustees of all the property

which I have heretofore devised in trust for the uses and purposes therein set forth, and they shall not be required to give bonds for the performance of the trusts aforesaid."

The plaintiff, after alleging that it is the owner in fee simple of an undivided 466/2880ths interests in said land, by the third paragraph of its complaint deraigned title thereto as follows: "That Plaintiff obtained its title to said undivided 466/2880ths' interest in the said land by deed from Lani Booth, Mellie E. Hustace, Lucy K. Ward, H. Kulumanu Ward and V. Kathleen Ward who are heirs of Victoria Ward and Matilda Foster and by deed from Victoria Ward, one of the heirs of Mary Foster, Bathsheba Allen and John N. Robinson, being the same persons named in Paragraph Seventh of the Will of James Robinson, a copy of which is attached hereto marked Exhibit 'A' and incorporated herein by reference and which said Will was probated in the Supreme Court of the Territory of Hawaii as Probate No. 1204; that James Robinson obtained his title by deed from the original grantee, W. Lane, which said deed is recorded in the Bureau of Conveyances in Book 36, page 105."

By their amended answer to the complaint the defendants admitted formal allegations and that they were in possession of and claimed that the defendant Zions Securities Corporation is the owner in absolute fee simple of all of said land except approximately 6.5+ acres, owned and claimed by others, and that the defendant Kahuku Plantation Company occupies the land owned by its codefendant by virtue of a lease from its codefendant and that it occupies 0.178 acres as owner thereof. They denied all other allegations and gave notice that they intend to rely upon the defense of adverse possession of said land for the full statutory period and also upon the plaintiff's laches, acquiescence, estoppel, res adjudicata, abatement, estoppel by deed, and waiver of any claim in and to said land or any portion thereof.

Trial by jury having been waived, the circuit judge before whom the cause was tried, in his written decision, sustained the claim of the defendants and judgment was entered in their favor. The cause is here on plaintiff's bill of exceptions.

The facts, in addition to those already stated, may be summarized as follows: Shortly after the death of James Robinson in 1876, his will was duly admitted to probate in this court and the three men named by him to be executors and trustees qualified as executors and entered upon their duties as such. In March, 1878, they filed a petition for approval of their attached account but did not allege that said account was a final account or that they had done all things required of them as executors or pray for a distribution to them as trustees of the properties devised to them in trust. The account was approved. No order terminating administration and distributing the estate to the trustees was entered. Thereafter, they and the survivors of them at irregular intervals filed accounts in the probate court up to 1909, in which they quite generally referred to themselves as trustees instead of as executors. However, the court and the masters appointed to examine the accounts almost invariably referred to them either as executors or as executors and trustees. In 1909 the sole survivor of the executors and trustees filed accounts in probate for the years 1903 to 1909. These accounts disclosed a sale of the land of Waiono to J. B. Castle in August 1905 for $3000. These accounts were referred to Henry Smith as master, who in his report advised the court that of the $3000 received for the land of Waiono one eighth thereof, or $375, had been distributed to the heirs of J. N. Robinson, one of the life beneficiaries named in the seventh paragraph of the will, who died in 1890, and that receipts from all of his heirs for their prorata shares of the purchase price were on file. He also called

the court's attention to the fact that there had been no formal closing of administration and that the "fiduciary has, for short, signed his official title as 'Trustee' only, whereas I believe the full title of his office is as 'Surviving Executor of, and Trustee under, the Will' etc." Victoria Ward, the plaintiff's grantor, was one of the heirs of J. N. Robinson and she receipted for her prorata share of the proceeds of the sale of the one-eighth interest in the land of Waiono, her receipt reading as follows:

"20.84                    Honolulu, March 12th, 1908

"Received from The Estate of James Robinson, the sum of Twenty & 84/100 Dollars, same being my One Ninth Share of the One Sixteenth undivided Interest, of the Estate of J. N. Robinson, deceased: in the Real Estate property at Waiono, Koolauloa, Island of Oahu; sold by the Trustee of the Estate of James Robinson, to James B. Castle, for the sum of $3,000.00, August 31, 1905.

(s)    Victoria Ward."

All of the facts reported by the master are borne out by the record evidence.

The court adopted the report of the master and on June 23, 1909, approved the accounts with the exception of a surcharge not here material. The fact that there had been no formal closing of the administration having been called to the attention of the parties and the court by the master, thereafter, on June 29, 1909, M. P. Robinson, the sole survivor of the three executors and trustees, filed in the probate court a petition reciting in part and praying as follows:

"that no petition for approval of their final accounts in said Estate as such executors, nor for final distribution of the estate remaining in their hands has ever been filed, nor has any decree of distribution in said Estate been made, the said executors having since the filing of said

first accounts acted, cared for and administered said Estate as Trustees.

"WHEREFORE your petitioner prays that a decree of distribution of all the property, real, personal or mixed, belonging to the Estate of said James Robinson, be now made to him, and that the Court do decree that, by reason of the death of the said C. P. Ward and the said S. C. Allen, your petitioner as the surviving Trustee under the Will of the said James Robinson, has the title to all of the property now vested in him, and that such other and further orders be made in the premises as to this Court shall seem meet and proper." The prayer of said petition was granted, the order of the court filed June 29, 1909, reciting that the court is satisfied "that the executors had filed an inventory of the estate, had given due notice to creditors, had paid all the debts owing and incurred by said decedent, and that the said M. P. Robinson is the sole survivor of the Executors and Trustees named in and by the said Will of said James Robinson deceased," and ordering that "Mark P. Robinson as the surviving Executor under said Will do deliver over unto Mark P. Robinson, sole surviving Trustee under the last Will and Testament of James Robinson, deceased, the property remaining in his hands as such executor and do file with the Court a proper receipt thereof, and that this Order be issued to take effect from the date of the filing of said receipt."

The receipt of Mark P. Robinson, "surviving trustee," to Mark P. Robinson, "the sole surviving executor of the last will and testament of James Robinson, deceased," for various lands (which did not include the land of Waiono) was filed June 29, 1909. It listed various stocks and bonds, including 347 shares of Wailuku Sugar Company of the par value of $100 each.

The foregoing was the final proceeding in the probate

court, the accounts of the fiduciary being thereafter filed in equity.

The deed to J. B. Castle purports to convey the fee-simple title to the whole of the land of Waiono. It was executed by Mark P. Robinson, who designated himself therein as "Trustee of the Estate of James Robinson, deceased," and said deed contains a warranty that "I am seized in fee as sole Trustee of the said James Robinson, deceased, of the said premises. * * * that I have good right to sell and convey the same and that I and my said representatives shall and will at all times, warrant and defend the same, against all lawful claims," etc. Said deed was executed August 31, 1905, and was duly recorded November 24, 1915. On March 30, 1910, J. B. Castle conveyed the whole of the land of Waiono to Koolau Agricultural Company, Limited. After conveying to Ching Shai a small portion of said land, the said corporation was on July 16, 1926, duly dissolved by decree of the treasurer of the Territory of Hawaii, and Antoine R. Ivins was appointed trustee for the creditors and stockholders of said corporation, with full powers to settle the affairs of the company according to law. Thereafter, on October 25, 1926, the said trustee conveyed to Zion's Securities Corporation all of the assets of said dissolved corporation, consisting of 51 parcels of land, including all of the land of Waiono, excepting only the parcel conveyed to Ching Shai.

The evidence discloses that the remaining seven eighths of the $3000 received for the land of Waiono, after distribution of one eighth thereof to the heirs of J. N. Robinson, were retained by the fiduciary and invested in shares of Wailuku Sugar Company for the uses and purposes of the trust as directed by the will in the event of sale. The inventory filed by the fiduciary with his accounts for the years subsequent to the sale of Waiono omitted said land

and included increased holdings of Wailuku Sugar Company stock.

At the trial counsel for the plaintiff stipulated that the defendants and their predecessors in title have been in possession of said land since the "purported deed of 1905." Supplementing the stipulation defendant showed that Koolau Agricultural Company, Limited, and Zion's Securities Corporation increased the cultivated area from about nine acres to some thirty acres and planted it in sugar cane; that water for irrigation was by them brought onto said land from adjacent Bishop Estate land and since 1931 Kahuku Plantation Company has cultivated the same land as a lessee of Zion's Securities Corporation.

Victoria Ward was also an heir of Bathsheba Allen and Mary Foster, two other life beneficiaries named in the seventh paragraph of the will. Bathsheba Allen died February 11, 1914, and Mary Foster died December 9, 1930. In due time after the death of a life beneficiary the trustees distributed in kind the proper fractional part of the personal property forming a part of the corpus of the trust to the heirs of the one who had died, each heir receiving his or her prorata share, and a like fractional share of the real estate was deemed to have vested in said heirs immediately upon the death of the life beneficiary, but no physical partition of the real property was made. The trustees continued to manage the real property and distribute the income thereof to the remaining life beneficiaries and to the heirs of the deceased life beneficiaries, each receiving his or her prorata part thereof. As the life beneficiaries of whom Victoria Ward was an heir died, she invariably received her prorata share of the personal property in kind and thereafter received from the trustees her prorata share of the income from the real property. The record does not disclose that she ever questioned the correctness of this procedure. However, on May 16, 1931,

after the death of Mary Foster, in a proceeding for a determination of her heirs, to which Victoria Ward was a party and was represented by counsel, the court entered an order finding that Victoria Ward was an heir and entitled to one seventh of the corpus of the trust distributable to the heirs of Mary Foster. Upon the entry of the foregoing order Mrs. Ward filed a notice of appeal and appeal. Her appeal was not perfected and was on June 2, 1931, withdrawn. On August 17, 1931, Victoria Ward conveyed to the plaintiff corporation such interest in the real property of the trusts created by the will of her father James Robinson as passed to her by his will as an heir of her brother J. N. Robinson and of her sisters Bathsheba Allen and Mary Foster. Victoria Ward died April 11, 1935, and Matilda Robinson Foster died January 4, 1937. Victoria Ward left surviving her as her heirs at law six daughters, who were also heirs with others of Matilda Robinson Foster. On May 22, 1937, five of the six daughters of Victoria Ward also conveyed to the plaintiff corporation such interest in the real property of the trusts as passed to them as heirs of their mother and of their aunt, Matilda Robinson Foster. Neither of the deeds conveying the grantor's interest in the corpus of the trust enumerated the lands involved. They simply conveyed all of the fee-simple right, title and interest of the grantor in law and in equity as an heir of the particular life beneficiary involved in his or her interest in the properties in the estate of and under the will of James Robinson, deceased.

After stating the facts the circuit judge decided that in 1905, when the land of Waiono was sold, Mark P. Robinson was the sole surviving executor and trustee and that as executor had authority to sell said land; that "when a person is both a trustee and an executor and executes a document giving himself one designation the law will

nevertheless impute that he executed the document in the capacity as will make the document valid and binding." In his final conclusion as to the validity of the deed of August 31, 1905, to J. B. Castle the circuit judge stated in substance that the executors held the property in fee simple for the purposes of the trust; that they had power to sell the property; that at the time the deed was executed, probate proceedings had not as yet been terminated; that the use of the word "trustee" in the deed is immaterial, since the law will infer that the grantor executed the deed in the capacity which would give it validity and that the parties who were entitled to it received the money obtained therefor.

The court also held that the plaintiff's grantors were barred by laches, waiver, estoppel by acceptance of benefits, and by the statute of limitations.

The circuit judge made no distinction between the authority of the executor to sell the one-eighth interest in the residue of the estate of the testator which was devised for the benefit of J. N. Robinson, who died prior to the sale, and his authority to sell the remaining seven-eighths interest devised for the benefit of life beneficiaries then living.

It hardly requires the citation of authority other than the decision of this court in *Thurston* v. *Allen*, 8 Haw. 392, to establish that upon the death of J. N. Robinson title to the one-eighth interest in the corpus of the trust held by the executor for his benefit during his life immediately vested in fee simple in his heirs and that after his death the executor had no authority to sell that particular one-eighth interest. The defendants must therefore prevail, if at all, upon their claim of title to that one-eighth interest on some theory other than the authority of the executor to sell and convey it.

In 1905, when it is admitted that J. B. Castle took

possession of the land of Waiono and that he and his successors have ever since retained possession, Victoria Ward was *sui juris* and the deed to Mr. Castle which was placed of record on November 24, 1915, was notice to her from and after that date that Mr. Castle's possession of the land was hostile to her claim of title to any interest therein. (*Kalamakee* v. *Wharton*, 16 Haw. 228.) This suit was filed December 17, 1940, more than thirty-five years after the date of the deed and more than twenty-five years after it was recorded. Mrs. Ward's interest in the corpus of the trust of which her sister Bathsheba Allen was the life beneficiary vested immediately upon Mrs. Allen's death in February 1914, more than twenty-six years before this suit was filed. Likewise, her interest in the corpus of the trust of which her sister Mary Foster was the life beneficiary vested on December 9, 1930, just ten years and eight days before suit was filed.

The facts to which we have referred demonstrate that from and after the death of J. N. Robinson his heirs were tenants in common with the executors of the lands forming a part of the original corpus of the trusts created by the will of James Robinson, and that situation continued until the land was sold to J. B. Castle in 1905. The deed to Mr. Castle purports to convey the fee-simple title to the whole of the land of Waiono and the stipulation of counsel that Mr. Castle and his successors in title have occupied said land ever since the conveyance to him, supplemented as it is by evidence of continuous cultivation of substantial portions of the land, brings this case squarely in line with the facts in *Kalamakee* v. *Wharton, supra,* bearing upon the question of ouster of one cotenant by another, where it was held that where a grantee comes into possession of land under a deed from one cotenant purporting to convey the entirety, it cannot be said *prima facie* that such grantee regards himself as a cotenant.

Applying the foregoing to the facts of the case before it, the court said:

"A reasonable attention on the part of the co-tenant to the condition of the premises would have shown her that the land had been fenced and part of it had been planted by some one else than herself or her uncle, the former co-tenant, and that the person doing this was Henry Wharton, living near by; and further, upon inquiry of him, it is to be inferred that she would then and there have learned that he claimed under his deed to be the sole owner, and that she would not be allowed by him to exercise any rights of ownership. In other words, that which was done upon the land was enough to put her upon inquiry, and to bring the case within the rule that 'the circumstances must be such as to bring home to the ousted owner the adverse character of the possession, or be such as would bring it home to him if he paid the proper attention to his rights.' *Smith* v. *Hamakua Mill Co.*, 13 Haw. 721." In *Elder* v. *M'Claskey*, 70 Fed. 529, Judge Taft writing the opinion, it was held that "An entry and possession under general warranty deeds in fee simple, with claim of exclusive ownership in fee, is an ouster of all other persons claiming an interest in the land at and from the time they have a right of entry, and it is immaterial that such deeds actually vest only a life estate or an undivided interest. The extent of the estate purporting to be conveyed characterizes the entry and subsequent possession."

The foregoing applies with equal force to the fractional interest claimed by the plaintiff under its deed from Victoria Ward, which vested in her with a right of entry immediately upon the death of J. N. Robinson.

We turn now to the question of the validity of the deed by which the land of Waiono was conveyed to James B. Castle. We have found that the fiduciary had no au-

thority either as executor or trustee to convey the undivided one-eighth interest in said land, which prior to the conveyance had vested in the heirs of J. N. Robinson. Our present inquiry relates solely to his authority to convey the remaining seven-eighths undivided interest therein. The facts relevant to the present inquiry have already been recited.

We reach the conclusion that the will of James Robinson created not one but eight trusts and that each of them continued until the death of the life beneficiary named therein, whereupon the one eighth of the trust corpus immediately vested in his or her heirs. (*Thurston* v. *Allen*, 8 Haw. 392.) That being true, the trust terminated as to the one-eighth interest devised to the executors to pay the income thereof to J. N. Robinson in 1890, when he died, and each of the remaining seven trusts continued until terminated by the death of the life beneficiary named therein. We also conclude that the authority to sell and convey any of the property devised in trust and to invest the proceeds thereof for the uses and purposes of the trust which the testator conferred upon his executors by the eighth paragraph of his will continued at least so long as they were executors. (*Wilson* v. *Snow*, 228 U. S. 217, 222, 223.) The executors and trustees being the same persons, there was no inconsistency in their acting in both capacities at the same time.

We concur in the conclusion of the circuit judge that in 1905 probate proceedings had not been terminated and that Mark P. Robinson, the sole survivor of the three men appointed executors and trustees, was still an executor (*Estate of Beckley*, 31 Haw. 163, 173), as well as a trustee, and as executor still had authority to sell and convey the remaining seven-eighths undivided interest in the corpus of the trust. It therefore remains for us to determine whether the fact that he purported to act as trustee in-

stead of as executor in the execution of the deed rendered the deed void. An enlightening opinion on this identical question is contained in the Maryland case of *Philbin* v. *Thurn*, 63 Atl. 571, 574, in which the court said: "The deed of July, 1903, was made by William F. Clare, Andrew J. Toland, and Patrick M. Carolan, 'as executors of the last will and testament of Neal O'Donnell,' and was signed and sealed by the grantors, under each of whose names there appears the words 'Exr. etc. of Neal O'Donnell, dec'd.' The grantors were trustees as well as executors. In their capacity of executors they had no power of sale, in their capacity of trustees they had an unqualified power to sell the decedent's real estate. In exercising a power which they undoubtedly possessed as trustees they inadvertently described themselves as executors; and the question is, does this erroneous designation of the capacity to which the power belonged defeat the act done, when the act done was clearly within the scope of their authority as trustees? Former decisions of this court answer that inquiry in the negative."

In support of their conclusion *Flickinger* v. *Hull*, 5 Gill 60, and *State, Use of Gable et al.* v. *Cheston & Carey*, 51 Md. 352, were cited and discussed. The court quoted from *Flickinger* v. *Hull* the following: "Where a person in one character is debtor and the same person in another character is creditor, the law regards the debt as paid by the debtor capacity to the creditor. This is on the same principle which governs in the case where a man has several capacities, and is found in possession of property, the law will attach the possession to the capacity in which, of right, it ought to be held; so also, where having various capacities, he executes an authority delegated to him in one of those capacities, the law will attribute the act to the proper authority, although the person does not profess to exercise it, in virtue of that particular power."

In explanation of *State, Use of Gable et al.* v. *Cheston & Carey, supra,* the court said: "It there appeared that John Gable by his will devised all the residuum of his estate to three trustees and the survivor of them in trust for the purposes therein stated, and appointed the same parties his executors. The executors purchased certain leasehold and fee-simple property and took the conveyances therefor to themselves as executors and they subsequently, in the same capacity, sold and conveyed the same property to a purchaser. As executors they had no authority to make such a purchase or such a conveyance; as trustees they had the power. In dealing with that state of facts this court said: 'It may not be necessary to decide the point in this case, but we find no difficulty in regard to the title to the real estate thus taken and transferred by the executors. The same parties were authorized to purchase and sell as trustees, and the fact that they took and executed conveyances as executors would seem to make a case covered by what is said in Flickinger v. Hull.'"

In *Griffith* v. *Nashville, C. & St. L. Ry.,* 147 Tenn. 224, 246 S. W. 532, 534, W. S. Griffith held the legal title to certain land as trustee for Joel Griffith, an incompetent. W. S. Griffith conveyed a portion of the land to the defendant railway company and in his deed purported to act as guardian instead of as trustee. After the death of Joel Griffith, the incompetent *cestui que trust,* those who became entitled to the trust corpus as remaindermen sued to recover the value of the portion of the land so conveyed to the defendant. On the issue raised by the capacity in which the fiduciary purported to act the court said: "Some question is made upon the fact that in this deed W. S. Griffith represented himself as guardian, and not as trustee, and that therefore the deed conveyed no title. We do not think there is any merit in this contention,

since W. S. Griffith had power to sell the land in the capacity in which he held it. It is immaterial whether he styled himself as guardian or trustee." *See* also *McDonald* v. *Valdosta Inv. Co.*, 142 Ga. 147, 82 S. E. 539, and *Blair* v. *Hazzard*, 158 Cal. 721, 112 Pac. 298.

The name of the principal defendant is variously referred to in the record as "Zion Securities Corporation," "Zions Securities Corporation," and "Zion's Securities Corporation." The apparent inconsistency in our use of the name of this corporation is explained by the fact that we have referred to it in the way in which it is used in the documents under discussion.

Counsel for the plaintiff also argue that the estate devised to the executors was an estate *per autre vie* and that hence such an estate was all they were authorized to sell and convey. We are unable to agree with this argument. It is immaterial whether any or what character of estate was given to the executors. The will specifically authorized and directed his executors to sell and convey "any of the property hereinbefore described that I have devised in trust * * * whenever they shall deem it best and expedient for the interest of my Estate, and to invest the proceeds thereof for the uses and purposes of the trusts hereinbefore declared." "A power over property is defined as liberty or authority reserved by, or limited to, a person to dispose of real or personal property for his own benefit, or for the benefit of others, and operating on an estate or interest, vested either in himself or in some other person; the liberty or authority, however, not being derived out of such estate or interest, but overreaching or superseding it, either wholly or partially. Such a power has also been defined as an authority enabling one person to dispose of the interest which is vested in another." 41 Am. Jur., Powers § 2, p. 806.

The testator certainly made it clear that what his

executors were to sell was the land or securities forming the corpus of the trust and substitute therefor the proceeds thereof, to be passed on to the remaindermen. Any other construction would give the remaindermen the original corpus augmented by the proceeds of the sale of the lesser estate contended for by counsel for the plaintiff.

The conclusions which we have reached on the issues discussed dispose of all of the exceptions and they are accordingly overruled.

*P. Cass* (*Cass & Silver* on the briefs) for petitioner-appellant.

*H. H. Moore* (*Stanley, Vitousek, Pratt & Winn* with him on the brief) for defendants-appellees.