HENRY SMITH *v.* HAMAKUA MILL COMPANY, Limited.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED DECEMBER 5, 1901.   DECIDED DECEMBER 31, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Under Civil Laws, Section 2113, which provides that kindred of the half blood shall inherit equally with those of the whole blood in the same degree, but shall be excluded when not of the blood of the ancestor from whom the inheritance came to the intestate by descent, devise or gift, cousins of an intestate on his mother's side inherit in preference to his half-brother on his father's side where the estate came to him by descent from his half-sister on his mother's side.

Evidence of ouster or adverse possession must be much clearer as between co-tenants than as between strangers in title. The circumstances must be such as to bring home to the ousted co-tenant the adverse character of the possession or such as would bring it home to him if he paid proper attention to his rights. Notice or knowledge of the adverse possession may be implied or constructive as well as actual.

But this rule as to adverse possession as between co-tenants does not apply where the possession of the one co-tenant is not at its inception in recognition of or subserviency to the other's title; as, where the co-tenant in possession claims sole ownership and is not aware of the existence or claim of title in the other co-tenant.

One in possession claiming title but having no title may purchase the outstanding title of one of two co-tenants and continue to hold without thereby acknowledging the similar title in the other co-tenant or holding in subserviency to that title.

OPINION OF THE COURT BY FREAR, C.J.

Ejectment for an undivided one-fourth of the ahupuaa of Koholalele, situated at Hamakua, Hawaii, containing about 6,330

acres, covered by Royal Patent 4,527, L. C. A. 26B, issued to Kailakanoa.

Upon the death of Kailakanoa, the land descended to her half-brother Huakini. Upon the latter's death, in 1860, one-half of the land descended to his wife Hoomana and afterwards passed by various conveyances to the defendant. About this half there is no dispute. The other half descended, upon Huakini's death, either to his half-brother P. Nahaolelua, under whom the defendant now claims, or else to his cousins Kapehe and Hanakaulani Holt, under the former of whom the plaintiff now claims one fourth.

The defendant at first pleaded in bar a former adjudication made in probate in 1871 to the effect that Nahaolelua and Hoomana, (not Kapehe, Mrs. Holt and Hoomana) were the heirs of Huakini. The Circuit Court sustained the plea but this court reversed that ruling (*ante,* 245) on the grounds that the probate judge had no jurisdiction either to make a direct decree of heirship or to distribute real estate, and that the adjudication of heirship in so far as it could be supported as incidental to the distribution of personal estate was not binding on Kapehe in this action of ejectment with respect to the real estate, because she was not a party, though she was a witness, in the probate proceedings—even if the adjudication would have been binding on her with respect to the real estate in case she had been a party in the probate case.

The defendant then answered and the case was tried before a jury in the Circuit Court. The plaintiff introduced evidence to show on the one hand title in himself by conveyances from certain persons who inherited from Kapehe, and that Kapehe and Mrs. Holt were the cousins and next of kin of Huakini at the time of the latter's death, except as to Nahaolelua, who was Huakini's half-brother; and on the other hand that Nahaolelua, although a half-brother, was not of the blood of the ancestor, Kailakanoa, from whom the land descended to Huakini. For present purposes we may assume that these things were satisfactorily proved. Nahaolelua, then, could not inherit, for, although as a

rule, kindred of the half blood inherit equally with those of the whole blood under our statute, yet they are excluded when they are not of the blood of the ancestor through whom the inheritance came to the intestate by descent, devise or gift. Civ. L., Sec. 2113; *Estate of Luka*, 9 Haw. 393. Consequently the defendant, not being able to show that Nahaolelua inherited from Huakini, was obliged to rely on adverse possession, and the questions now to be decided are raised by the defendant's exceptions to certain rulings of the trial judge in regard to the law of adverse possession, the consequence of which was that most of the defendant's evidence was stricken out and a verdict directed for the plaintiff.

To show adverse possession, the defendant offered in evidence the decree in probate above referred to declaring Nahaolelua an heir of Huakini. This was offered merely for the purpose of showing that Nahaolelua entered under color of right and not for the purpose of showing that he was an heir or had title. It was ruled out and exception was taken. The defendant also introduced in evidence a lease from Nahaolelua to Charles Notley, dated April 16, 1872, for five years, of the whole ahupuaa; a deed from Hoomana to Nahaolelua, dated September 24, 1874, of all her right, title and interest in the land,—she being then the owner of one-half; the will of Nahaolelua dated June 11, 1875, probated November 3, 1875, devising this ahupuaa to his son Kia Nahaolelua; a lease of the ahupuaa from Kia Nahaolelua to W. M. Gibson, dated January 13, 1877, to begin April 17, 1877, the day after the expiration of the former lease; an assignment of the last described lease from Gibson to Charles Notley, dated August 9, 1877; a deed of the ahupuaa from Kia Nahaolelua to H. A. Widemann, dated December 2, 1878; a deed of the ahupuaa from Widemann to Charles Notley, dated March 27, 1882; an agreement between Charles Notley and T. H. Davies, dated May 4, 1886, under which they became copartners under the name of the Hamakua Plantation Company, and by which Notley contributed this ahupuaa as part of the capital of the company; a deed of this ahupuaa from Notley and Davies to

the defendant corporation, dated April 1, 1896. It does not appear just who had possession of the land or what was done with it from Huakini's death in 1860 to the probate proceedings in 1871 or thereafter to the date of the lease in 1872, but evidence was introduced tending to show that Notley took possession at the latter date, used the lower portion as a ranch and in the upper portion shot wild cattle, cut trees to obtain bark for tanning purposes, built a house and fenced in about eight or ten acres for a sheep pen, and in 1880 began the cultivation of cane on the lower portion, which cultivation has continued to the present time, the upper portion now being used to some extent for ranch purposes. The whole land was not fenced until 1884. At the close of the case, the plaintiff moved that all this evidence as to the leases, the deeds, the will and possession be stricken out on the ground that no notice that the possession was adverse was given to plaintiff's predecessors in title. This motion was granted and exception was taken. The plaintiff then moved the court to instruct the jury to find for the plaintiff on the ground that there was no evidence of adverse possession. This instruction was given and the jury acted accordingly, and the defendant excepted.

Whether the court erred in refusing to admit the probate decree in evidence we need not say. There seems to be some doubt as to how far void decrees or judgments may be admitted for special purposes. See *Kailianu v. Kaue*, 9 Haw. 505, and cases cited in 1 Cent. Dig. 2,374. It may be that the court did not err in declining to admit the decree as evidence of color of title, though we are of the opinion that the record as a whole in that case and perhaps the decree alone was admissible as evidence of a claim of title and also as tending to prove notice of such claim to Kapehe, the plaintiff's predecessor in title, who was a witness in that case. Less is required to show a claim of title than to show color of title.

Whether the court erred in instructing the jury to find for the plaintiff after having struck out most of the defendant's evidence, we need not say. So of several other rulings to which

exceptions were taken but which have not been referred to above. These questions are not likely to arise on a new trial, which, as we shall show, will have to be granted.

In our opinion the court erred in striking out the evidence above mentioned as stricken out. There was sufficient evidence of adverse possession to go to the jury, if this were an ordinary case between persons who, and whose predecessors in title, were strangers. The plaintiff contends, however, that the relation of co-tenancy exists between these parties and has existed between their predecessors, and that therefore the rule requiring notice of adverse possession to be brought home to the co-tenant out of possession applies to this case, and that there was no evidence that such claim was so brought home more than twenty years before the commencement of this action, that being the period prescribed by the statute of limitations at the time this action was brought, November 26, 1897, and consequently that in the absence of evidence that these various acts of ownership were brought home to or known by the plaintiff or those under whom he claims, all the evidence as to those acts was immaterial. There was evidence that Kapehe did not live on the island of Hawaii where the land was, and no evidence that she knew what was being done with the land. Whether, if that rule were applicable to this case, there was sufficient evidence to go to the jury, we need not say. In our opinion it is not applicable.

The defendant claims under Notley. Notley claimed under the Nahaoleluas. The younger Nahaolelua claimed under the elder Nahaolelua. The plaintiff, in order to show title in himself, had to show that the elder Nahaolelua was not an heir of Huakini and therefore not a co-tenant with his (plaintiff's) predecessor in title, Kapehe, until at least he (Nahaolelua) received the deed from Hoomana, which was sometime after he made the lease to Notley. Consequently Nahaolelua was not at first a co-tenant with plaintiff's predecessors. Further there is no evidence that he knew at the time he made that lease, or at the time he took the deed from Hoomana, or that he or any of those claiming under him knew at any time until quite recently, that the

plaintiff's predecessors had any title to the land or claimed any title to it. His possession was never at any time in recognition of the existence of any co-tenant other than Hoomana whose interest he purchased in 1874. So far as appears, he and those under him were as ignorant that Kapehe had or claimed to have any title to this land as it is now contended Kapehe was that their claim was adverse. Could not the statute begin running in favor of Nahaolelua and those claiming under him as against Kapehe unless the latter had actual notice that the former were claiming adversely to her? Can it be held that the statute could not begin running against Kapehe merely because, when Nahaolelua bought Hoomana's half he became in fact a co-tenant with Kapehe, although he had previously claimed title in himself to the other half and had acted as owner and was in fact not a co tenant with Kapehe and supposed that Hoomana was the only person in existence besides himself having or claiming to have any interest in the land, and supposed when he bought out Hoomana that he was buying the only outstanding claim there was, although in fact there was another co-owner, Kapehe? It would be absurd to hold that those who for the statutory period occupy land, lease it, devise it, convey it and act in regard to it in all respects as their own, believing that they are the sole owners, should be debarred from setting up adverse possession, because they did not hunt the world over for possible co-owners and succeed in finding them and notify them of their adverse claim. If the doctrine contended for applies to this case, it would be im· possible for one claiming in whole or in part under certain heirs to set up adverse possession against other heirs of whose existence or claims he was ignorant.

We do not concede that the rule as between co-tenants is as strong as counsel contend. No doubt there is a great difference in this respect between co-tenants on the one hand and strangers in title on the other hand. The rule itself, however, would seem to be much the same in all cases, that is, the circumstances must be such as to bring home to the ousted owner the adverse character of the possession, or be such as would bring it home to him

if he paid proper attention to his rights. The difference would seem to be chiefly one of degree or application. If the parties are strangers in title, the true owner out of possession would naturally look carefully to his rights and comparatively slight acts would be sufficient to notify him of the existence of adverse claims. If the parties are co-tenants and the co-tenancy is known or recognized, more significant acts or conduct would generally be required, for the co-tenant in possession would in such case naturally be supposed to be acting merely in the exercise of his own rights and not in denial of his co-tenant's rights. There may be other relationships of a more fiduciary nature, the recognition of which would require acts of a yet more significant character to bring home to the real owner notice of a hostile claim. But when one enters and sets up his claim before he becomes a co-tenant, there is no reason why he cannot be held to continue under that claim either as to the whole or a part of the land after he buys out another's claim whether to the whole or a part of the land, in the belief that that is the only other claim in existence, nor is there any reason why he should be held to hold in subordination to his co-tenant's rights, when he denies from the outset that there is a co-tenancy and when so far as appears the one out of possession who is a co-owner in fact does not know, any more than the one in possession does, that he is a co-owner and does not claim to be such. The purchase of an outstanding claim would naturally be expected to strengthen rather than weaken the claim already made. And where there is a denial of a co-tenancy by the one in possession and ignorance of its existence on the part of both co-tenants, acts of ownership by the one in possession cannot be regarded as done merely in the exercise of his own actual rights and in subserviency to the rights of the other. This court has always held that evidence of ouster or the adverse character of a claim must be much clearer as between co-tenants than as between strangers, but it has never gone so far as to hold that there must be actual notice to or knowledge on the part of the one out of possession, or that the more stringent rule applicable to cases of co-tenancy applies where there is

no recognition or knowledge of the existence of a co-tenancy. See *Nahinai v. Lai*, 3 Haw. 317; *Kaia v. Kamaile*, 4 *Id.* 353; *Kuanalcua v. Kipi*, 7 *Id.* 575; *Haw. Com. & Sug. Co. v. Waikapu Sug. Co.*, 9 *Ib.* 75; *Kaioipahia v. Kuna*, 10 *Id.* 583; *Nahaolelua v. Kaaahu*, 10 *Id.* 662; *Jones v. Pooloa*, 11 *Id.* 755. The most lucid and pertinent opinion that has come to our notice with reference to the questions raised in the present case is that of the United States Circuit Court of Appeals by Judge Taft in *Elder v. McClaskey*, 70 Fed. Rep. 529.

The exceptions are sustained, the verdict is set aside and a new trial ordered.

*L. A. Dickey* and *Andrews, Peters & Andrade* for plaintiff.

*C. Brown* and *F. W. Hankey* for defendant.