HELEN PEBIA, LYDIA MAERTENS, WALTER F. SANBORN AND WALTER F. SANBORN, GUARDIAN OF THE PERSONS AND ESTATES OF HELEN K. SANBORN, WALTER F. SANBORN, JR., JOHN W. SANBORN AND PERCY D. SANBORN, MINORS, v. HAMAKUA MILL COMPANY.

No. 1765.

SUBMITTED SEPTEMBER 12, 1927.      DECIDED SEPTEMBER 27, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity, commenced August 18, 1926, for partition of the land described in grant number 2122, situate in the district of Hamakua, County of Hawaii, and containing an area of 120 acres. Issues were raised concerning the title to the land and these were heard and decided by the presiding judge without a jury. His conclusion was that the petitioners had no title and that the title was vested seven-eighths in the respondent and one-eighth in one Charles H. Baker, as tenants in common. The respondent and Baker not desiring partition, the bill was dismissed. From the decree entered in pursuance of that opinion the case comes to this court by appeal.

The trial judge made the following statement of his findings:

"Title to Grant 2122 was in George K. Lindsey and by him devised in fee in equal shares to his eight children, viz., Thomas W. Lindsey, Emma Deverill, Elizabeth Chillingworth, Angelina Baker, James Fay Lindsey, Edward Lindsey, Robert Lindsey and Willie Lindsey.

"Thomas W. Lindsey acquired by deed the title of his brothers and sisters in and to Grant 2122, except that of his sister, Angelina Baker, whose one-eighth interest is now owned by her only child, Charles H. Baker. The one-eighth interest of Emma Deverill he claims to have acquired by the will of said Emma Deverill.

"The said Thomas W. Lindsey, now deceased, by his will devised all his interest in Grant 2122 in fee to his seven children, W. M. S. Lindsey, Thomas Lindsey, Charles Lindsey, Sam Lindsey, Mary Mainaaupo, Elizabeth Lindsey and Christina Kahaikupuna, share and share alike. The date of the death of Thomas W. Lindsey is not definitely shown, but it was after October 28th, 1911, for on that date he executed Exhibit 5.

"The respondent, the Hamakua Mill Co., claims to be the owner by various deeds of conveyance from the devisees of Thomas W. Lindsey of the entire estate in Grant 2122, except the one-eighth interest of Charles H. Baker, and petitioners concede this claim except as to the one-eighth interest acquired by Emma Deverill under the will of her father, George K. Lindsey.

"Emma Deverill died September 2, 1899, leaving four children, Arthur, Sarah, Angeline and Helen Deverill. Arthur Deverill, now deceased, devised all his property to Sarah Deverill, now known as Lydia Maertens, petitioner; Angeline Deverill became the wife of Walter F. Sanborn and is now deceased intestate, leaving surviving, her husband, Walter F. Sanborn and four minor children, viz., Walter F. Sanborn, Jr., John W. Sanborn, Percy D. Sanborn and Helen K. Sanborn, petitioners; Helen Deverill is now Helen Pebia, petitioner.

"Emma Deverill was afflicted by periods of insanity and was admitted to the insane asylum at Honolulu on February 21, 1878, and discharged April 2, 1878. Admitted again on November 23, 1889 and discharged on Sept. 25, 1890. Admitted again on Oct. 29, 1897, and remained there until the date of her death, Sept. 2, 1899. On April 25, 1891, she signed the deed, Exhibit 'A', under which petitioners claim,—this deed was recorded on February 28, 1925. Emma Deverill executed her will on May 25, 1890, which was probated December 5, 1899, under which will title to her interest in this land is claimed to have vested in Thomas Lindsey, her brother. See Exhibit 1.

"The existence of Exhibit 'A', the deed by Emma Deverill to her children, was not known to the petitioners nor to any other person holding an interest in Grant

2122 until a short time before the proceeding was had on February 25, 1925, before Honorable Ray J. O'Brien, judge of the circuit court of the first judicial circuit, to entitle said deed to be recorded.

"As showing title, claim of title and adverse possession in Thomas W. Lindsey and his successors to Grant No. 2122, the evidence shows:—

"Respondent's Exhibit 1 is a certified copy of the petition for probate of the will of Emma Angelina Deverill, the will and the order of probate, of the probate court of the first judicial circuit. The will contains the provision: 'I give and bequeath to my brother, "Thomas Lindsey", the whole of my estate real or personal of whatsoever kind and nature and wheresoever situated, and hereby appoint my said brother sole executrix (?) of this my last will and testament without bond.'

"The order of probate of the will recites that Emma A. Deverill died on or about September 3, 1899, at Honolulu; that the alleged will was executed by her, and 'Wherefore, it is ordered that said document, now in court, and hereto attached, is hereby admitted to probate as the last will and testament of said Emma Angeline Deverill. And it is further ordered, that letters testamentary issue unto the said Thomas Lindsey (without bonds).' Thomas Lindsey, the devisee, and executor of said will, Thomas W. Lindsey, and Thomas Weston Lindsey are one and the same person.

"Exhibit 8, a lease by Thomas W. Lindsey to Hamakua Mill Co., dated February 23, 1900, for a term of 12 years, granting an undivided seven-eighths of Grant 2122. This lease provides that the lessee shall pay all taxes 'to which the said premises or any part thereof may become liable during the said term.' This lease was recorded March 3, 1900.

"Exhibit 9, a lease by Chas. H. Baker to Hamakua Mill Company, dated May 21, 1901, for a term of 12 years, granting an undivided one-eighth of Grant 2122. This lease provides for the payment of taxes by the lessee and was recorded on June 15, 1901.

"Exhibit 2, is a deed by Thomas Weston Lindsey to

Francis M. Swanzy, dated Nov. 11, 1907, conveying an undivided seven-eighths interest in a portion of Grant 2122.

"Exhibit 3, a deed from Charles Henry Baker to Francis M. Swanzy, dated July 19, 1907, conveying an undivided one-eighth interest in same portion of Grant 2122 as conveyed by Exhibit 2.

"Exhibit 4, a mortgage by Thomas Weston Lindsey et ux. to Anthony Lidgate for $8400.00, dated Feb. 22, 1910, covering with other lands an undivided seven-eighths of Grant 2122.

"Exhibit 10, a lease by Thomas Weston Lindsey et ux. to Hamakua Mill Co., dated February 22, 1910, for 12 years from April 1, 1912, granting an undivided seven-eighths of Grant 2122.

"Exhibit 5, a contract of sale and deed by T. W. Lindsey to Paauilo Agricultural Co., dated Oct. 28, 1911, to convey and conveying an undivided seven-eighths of a portion of Grant 2122.

"Exhibit 11, a lease by Chas. H. Baker to Hamakua Mill Co., dated April 1, 1912, recorded April 2, 1912, granting an undivided one-eighth of Grant 2122. Lessee to pay all taxes. Term of lease 10 years from April 1, 1913.

"Exhibit 6, a mortgage by all the children (seven) of Thomas W. Lindsey to Alfred W. Carter for $3,000.00, dated Dec. 4, 1917, covering among other lands Grant 2122.

"Exhibit 7 is release of Lidgate $8400.00 mortgage, dated July 22, 1918.

"Exhibit 12, a deed by Charles N. Lindsey et ux. to Hamakua Mill Co., dated Feb. 27, 1925, conveying one-half of one-eighth of Grant 2122. Recorded March 5, 1925.

"Exhibit 14, a deed by Thomas W. Lindsey et ux. to Hamakua Mill Co., not dated, but acknowleged March 21, 1925, and recorded March 30, 1925, conveying 7.5 acres (about one-sixteenth) of Grant 2122.

"Exhibit 13, a deed by Chas. N. Lindsey et ux. to Hamakua Mill Co., dated May 28, 1925, conveying one-sixteenth of Grant 2122. Recorded June 1, 1925.

"Exhibit 16, a deed by Mary Mainaaupo et mar. to Hamakua Mill Co., dated May 11, 1925, recorded May 23, 1925, conveying an undivided one-eighth of Grant 2122.

"Exhibit 17, a deed by Christina Lindsey Kahaikupuna et mar. to Hamakua Mill Co., dated May 11, 1925, recorded May 23, 1925, conveying an undivided one-eighth of Grant 2122.

"Exhibit 19, a deed by Elizabeth Lindsey to Hamakua Mill Co., dated May 11, 1925, recorded May 23, 1925, conveying an undivided one-eighth of Grant 2122.

"Exhibit 18, a deed from Samuel F. Lindsey et ux. to Hamakua Mill Co., dated May 12, 1925, recorded May 23, 1925, conveying an undivided one-eighth of Grant 2122.

"Exhibit 20, a deed by William M. S. Lindsey et ux. to Hamakua Mill Co., Ltd., dated May 12, 1925, recorded May 23, 1925, conveying an undivided one-eighth of Grant 2122.

"Exhibit 15, a deed by Thomas W. Lindsey et ux. to Hamakua Mill Co., dated May 28, 1925, and recorded June 1, 1925, conveying all interest and not less than an undivided one-sixteenth of Grant 2122.

"(The Thomas W. Lindsey, grantor in Exhibits 14 and 15, is the son of Thomas Weston Lindsey).

"The testimony further shows that after the death of Thomas W. Lindsey, his son, W. M. S. Lindsey, by appointment of the court as administrator and by agreement with his brothers and sisters, took charge of the property of the deceased for the heirs and continued so in charge until 1925. Before his death Thomas W. Lindsey frequently stated that he owned seven-eighths of Grant 2122 and after his death his sons and daughters claimed to be the owners of seven-eighths of Grant 2122, the other one-eighth being in Charles H. Baker. W. M. S. Lindsey as such agent collected the rents from the Hamakua Mill Company on the seven-eighths interest in Grant 2122; accounted for these rents to his brothers and sisters and to no one else; never accounted to the heirs of Emma Deverill; during this time no one claimed any interest in 2122 adverse to his brothers and sisters; with his brothers and sisters executed a mortgage (Ex-

hibit 6) on Grant 2122, and other transactions, as shown by the Exhibits above outlined. From 1900 to the time of the trial the taxes on Grant 2122, pursuant to the terms of the several leases, were paid by the lessee, the Hamakua Mill Company, which company held all of Grant 2122, including one-eighth of Charles H. Baker, during this entire period."

The trial judge further found, upon conflicting evidence which involved questions of the credibility of witnesses, that at the time of the delivery of the deeds conveying to it the title to an undivided seven-eighths interest in the land, the Hamakua Mill Company had actual knowledge of the existence of the deed from Emma Deverill to her four children.

While a few exhibits offered by the petitioners and marked with the letters of the alphabet were forwarded to this court on the appeal, none of those offered by the respondent and marked numerically were called for by the praecipe or certified to this court and they are not now before us. The findings of the circuit judge, therefore, which are based upon the introduction of instruments not now before us, must be taken to be correct. Many of his other findings are based upon undisputed testimony or the stipulations of the parties. Those concerning the actual occupation of the land, beginning with the year 1899 or 1900 and ever since that date, the payment of the taxes on the whole of the land, the transactions relating to the land in which the respondent and its predecessors in interest and Baker took part, the claims of title put forward from time to time by the respondent and its predecessors in interest, the collection of the rents from the respondent by Thomas W. Lindsey and his children and by Baker, the disposition of those rents and the accountings that were had and the accountings that were not had, are all based upon undisputed evidence. So, also, the finding relating to the

knowledge on the part of the respondent of the deed of
Emma Deverill at the time that it acquired title in fee
by various deeds has ample evidence for its support and
since the evidence is conflicting and involved questions of
the credibility of the witnesses we shall not attempt to
review that particular finding or to substitute our judg-
ment for that of the judge who actually saw and heard
the witnesses.

The two main questions, as stated in the brief of
the appellants, are (a) whether the court erred in find-
ing from the evidence that the respondent and its pred-
ecessors in interest had acquired title by adverse pos-
session or under the will of Emma Deverill, and (b)
whether the court erred in taxing against the petitioners
an item of costs in the sum of $82. Under the first ques-
tion the contention is advanced that "the evidence fails
to show a case in which title by adverse possession
could be acquired by a tenant in common to the common
property, even if this title claimed were to the whole
and not merely to an undivided fractional interest there-
in." The argument relates partly to the principles which
should guide the court in determining the circumstances
under which a tenant in common can acquire title by ad-
verse possession against his co-tenant and partly to the
quantum of evidence to prove an ouster of a co-tenant.

The law on a part of this subject was carefully con-
sidered and definitely laid down by this court in 1901 in
the case of *Smith* v. *Hamakua Mill Co.,* 13 Haw. 716, and
has ever since been adhered to and need not now be re-
considered. On pages 721 and 722 the court said: "We
do not concede that the rule as between co-tenants is as
strong as counsel contend. No doubt there is a great
difference in this respect between co-tenants on the one
hand and strangers in title on the other hand. The rule
itself, however, would seem to be much the same in all

cases, that is, the circumstances must be such as to bring home to the ousted owner the adverse character of the possession, or be such as would bring it home to him if he paid proper attention to his rights. The difference would seem to be chiefly one of degree or application. If the parties are strangers in title, the true owner out of possession' would naturally look carefully to his rights and comparatively slight acts would be sufficient to notify him of the existence of adverse claims. If the parties are co-tenants and the co-tenancy is known or recognized, more significant acts or conduct would generally be required, for the co-tenant in possession would in such case naturally be supposed to be acting merely in the exercise of his own rights and not in denial of his co-tenant's rights. There may be other relationships of a more fiduciary nature, the recognition of which would require acts of a yet more significant character to bring home to the real owner notice of a hostile claim. But when one enters and sets up his claim before he becomes a co-tenant, there is no reason why he cannot be held to continue under that claim either as to the whole or a part of the land after he buys out another's claim whether to the whole or a part of the land, in the belief that that is the only other claim in existence, nor is there any reason why he should be held to hold in subordination to his co-tenant's rights, when he denies from the outset that there is a co-tenancy and when so far as appears the one out of possession who is a co-owner in fact does not know, any more than the one in possession does, that he is a co-owner and does not claim to be such. The purchase of an outstanding claim would naturally be expected to strengthen rather than weaken the claim already made. And where there is a denial of a co-tenancy by the one in possession and ignorance of its existence on the part of both co-tenants, acts of ownership by the one

in possession cannot be regarded as done merely in the exercise of his own actual rights and in subserviency to the rights of the other. This court has always held that evidence of ouster or the adverse character of a claim must be much clearer as between co-tenants than as between strangers, but it has never gone so far as to hold that there must be actual notice to or knowledge on the part of the one out of possession, or that the more stringent rule applicable to cases of co-tenancy applies where there is no recognition or knowledge of the existence of a co-tenancy. See *Nahinai* v. *Lai*, 3 Haw. 317; *Kaia* v. *Kamaile*, 4 *Id.* 353; *Kuanalewa* v. *Kipi*, 7 *Id.* 575; *Haw. Com. & Sug. Co.* v. *Waikapu Sug. Co.*, 9 *Ib.* 75; *Kaioipahia* v. *Kuna*, 10 *Id.* 583; *Nahaolelua* v. *Kaaahu*, 10 *Id.* 662; *Jones* v. *Pooloa*, 11 *Id.* 755. The most lucid and pertinent opinion that has come to our notice with reference to the questions raised in the present case is that of the United States circuit court of appeals by Judge Taft in *Elder* v. *McClaskey*, 70 Fed. Rep. 529." See also the cases cited in that opinion.

It is undoubtedly true that, as held in cases cited in the appellants' brief, mere payment of taxes is not sufficient to give notice to a tenant in common of an adverse claim by his co-tenant and that mere possession, unaccompanied by other acts or circumstances indicating the nature of the claim of the one in possession, is not sufficient; and the same may be said of any one individual element of adverse possession unaccompanied by the other essentials of that mode of acquisition of title. But when, as in the case at bar, a number of these elements concur, such as actual possession, payment of all taxes by the occupant, non-payment of any taxes by the alleged true owners, repeated acts of leasing and mortgaging by the adverse claimants, conveyance by the adverse claimants of a strip of land over the tract in question for

purposes of a roadway, statements by the adverse claimants that they were claiming in fee, a lack of knowledge by the adverse holders as well as by the present petitioners of the deed which alone would give the petitioners a right or semblance of right to claim the title, a collection of all rents by the adverse claimants and the application of the same to their own uses, a failure to account to the petitioners and to pay to them any part of the income produced by the land and all of these acts continue for a period of twenty-six years or more,—when all of these things concur they are sufficient to give notice to the alleged true owners that the actual holders are holding adversely to them or would be sufficient if the true owners had paid proper attention to their rights. As stated in the case above quoted from, there was no duty on the part of the adverse holders to search the world over for other owners. The ignorance of the petitioners concerning the title that was said to be in them cannot avail as a defense. It is the actual occupation, accompanied by hostility and the other elements usually named in this connection, with the resulting ouster of the true owners, which operates in the course of time to transfer the title to the adverse claimants.

Another contention presented by the appellants is that it is impossible as a matter of law for those claiming an undivided interest in land, such as seven-eighths in this instance, to oust and acquire title as to one-eighth against the true owner while at the same time recognizing that another, in this instance Baker, was the owner of an undivided one-eighth interest. The cases cited in support of this contention do not in our opinion justify it. This court proceeded upon the contrary theory in *Kaahanui* v. *Kaohi,* 24 Haw. 361. In that case the contention of the defendant-appellant was stated to be "that the decision is erroneous for the reason that

the plaintiff, being a cotenant in common and admitting the cotenancy of defendant, the occupancy of plaintiff and defendant being a joint occupancy or as tenants in common, plaintiff cannot rely on such occupancy as being exclusive and adverse to the third tenant in common"; and it was added by the court that "this presents the only question calling for our decision". Remarking that the view "that one tenant in common may acquire the title of a cotenant by adverse possession is well recognized" (citing earlier Hawaiian cases) "where the one ousts the other and claims the title which the other did hold, all of the necessary elements of adverse possession being present", the court went on to say, at pages 363 and 364: "Here the plaintiff occupied and claimed about one-half of the land under claim of ownership of a one-half interest for a period of nearly fifty years, the defendant occupying and claiming the other half until 1913, when the defendant obtained a deed from Kaimiola, who it is not found ever prior to that time claimed any interest in the land. * * * We think * * * that the plaintiff has succeeded by long continuous adverse possession and user to the interest which otherwise would have passed to Kaimiola and from him, by virtue of his deed made in 1913, to the defendant. All of the elements of adverse possession, according to the findings of fact made by the trial court, were present. The plaintiff, who held the legal title to less than one-half of the land in controversy and which was owned in cotenancy, actually occupied for more than forty years about one-half of the land claiming a one-half interest therein (the other half being occupied by a cotenant, admitted to be the owner thereof) by such adverse possession and user acquired title to a small interest in the land the title to which otherwise would have been in a third co-

tenant who did not during the time claim any interest in the land."

That case differed from this in that there were two cotenants who together claimed the whole but actually occupied each his portion separately, while in the case at bar Thomas W. Lindsey and his successors in interest on the one hand and Baker on the other occupied the whole land as tenants in common, the Lindseys claiming seven-eighths with recognition of Baker and Baker claiming one-eighth with recognition of the Lindseys. But this feature of the apparent several occupancy of the two halves of the land evidently had no influence upon the court in the Kaahanui case. It was not referred to in the reasoning of this court, the judgment of the trial court was that the plaintiff was the owner of "an undivided one-half interest" in the land and that judgment was not in any wise modified on the appeal. The two occupants were treated as claimants and holders of undivided interests. The court clearly recognized in that case that the fact that one claiming by adverse possession an undivided one-half interest (which was a larger interest than he had shown a paper title to) could, as a matter of law, acquire by adverse possession an undivided interest in the land, while at the same time acknowledging that a third undivided interest was outstanding in another. Upon principle, no good reason appears for holding to the contrary. If the actual possession of the land is clearly adverse in its nature to all of the world except one man and is accompanied by such circumstances as to give notice (actual or constructive, within the rule of *Smith* v. *Hamakua Mill Co.*, supra) to the true owner of his own exclusion and of the extent of the fractional undivided interest claimed by the occupants, the underlying principles which resulted in the doctrine of adverse possession should operate as clearly

in favor of this adverse holder as they do in the case of the ordinary adverse holder who occupies and claims the whole of a piece of land instead of a fractional interest therein. The same necessity exists for the repose of titles, the same purposes of public policy are served by the application of the same rules and upon the assumption stated no injustice results to the true owner losing his title which does not result to the true owner who loses his title in the ordinary case of the occupancy of a whole piece of land.

The case at bar appeals to us as being a particularly strong one for the application and enforcement of the doctrine of adverse possession. Thomas W. Lindsey, the admitted owner by devise and by purchase of an undivided six-eighths interest in the land, recognizing the vesting of a seventh one-eighth interest in Angeline Baker and later in her son, Charles W. Baker, is given by the will of his sister, Emma Deverill, the remaining one-eighth interest. That will is promptly presented by him for probate and is admitted to probate and he is appointed executor. It is true that that sister in her lifetime suffered from insanity, but that insanity was not of a continuous nature. She had lucid intervals of long duration and, even while detained in the asylum, at times appeared to be healthy of mind and at other times appeared to be insane. There was room for the belief on his part that his sister had sufficient mental capacity at the time that she executed the will and the action of the court· in admitting the will to probate was calculated to strengthen that view on his part. In any event, the will clearly constituted color of title,— "that which in appearance is title, but which in reality is no title". 1 A. & E. Ency. L. 846. He claimed under the will the one-eighth which it devised to him. For twenty-six years thereafter he and his successors in

interest continuously claimed an undivided seven-eighths interest in the property and, in conjunction with the admitted owner of the other one-eighth interest, executed long leases of the whole property to the respondent. The respondent took and maintained during all of those years actual possession of the land, devoting it wholly to its own uses and excluding all others from possession. All of the rents were paid, seven-eighths to Thomas W. Lindsey and his successors and one-eighth to Baker. Thomas W. Lindsey and his successors devoted all of the rents of the seven-eighths interest to their own uses and purposes, recognizing no one else as entitled to any part thereof and accounting to no one else. The mill company as the lessee of Thomas W. Lindsey and his successors, on the one hand, and of Baker on the other, paid all of the taxes on all of the land during all of those years in fulfillment of the covenant exacted from it by its lessors. During all of that long period of years neither the adverse claimants nor its lessee nor even the petitioners, knew until early in 1925 that the children of Emma Deverill had any paper title or any semblance of title to the land. If the deed of Emma Deverill and her husband was in truth ever legally delivered to or for her children, it is their misfortune that for thirty-four years they knew nothing of its execution or delivery; but that would seem to be precisely one of those accidents and one of those situations resulting therefrom that the statutes of repose were intended to meet and to cure.

The only other question remaining is that of costs. J. M. Monsarrat was subpoenaed by the respondent and in pursuance of the subpoena went from Honolulu to Hilo where the trial was held. After arrival there he was notified by the respondent that he would not be called by it as a witness. The petitioners, learning of

this fact, thereafter called him to the stand and he testified both on direct examination and on cross examination. An item of "witness fees and mileage" in the sum of $82 was included in the respondent's bill of costs and was allowed and taxed by the trial court. In this there was no error. Section 2549, R. L. 1925, as amended by Act 24 of the Laws of 1925, provides that "every witness attending and testifying upon the trial of any civil cause, in any court, shall be paid the sum of two dollars ($2.00) for each day's attendance in court and traveling expenses at the rate of twenty cents a mile each way" and that "the fees of witnesses shall be taxable items in the bill of costs to be paid by the losing party." The only objection offered to the item is that the witness was not subpoenaed by the petitioners and was subpoenaed and released, without testifying, by the respondent. The statute does not make the distinction contended for. It provides in unambiguous language that "the fees of witnesses shall be taxable items in the bill of costs to be paid by the losing party." The witness was subpoenaed and attended and was examined and cross examined. The successful litigant who subpoenaed him and paid him the statutory fees is entitled to recover the amount so paid from the losing party.

The judgment appealed from is affirmed.

*Ulrich & Hite* for petitioners.

*J. W. Russell* for respondent.